# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JACQUELYN DERRY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | No. 16-cv-11434 <br><br> Magistrate Judge <br> Susan E. Cox |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jacquelyn Derry ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Defendant," or the "Commissioner") to deny her application for disability benefits. The parties have filed cross-motions for summary judgment. For the following reasons, Plaintiff's motion is denied [dkt. 12], the Commissioner's motion is granted [dkt. 17], and the Administrative Law Judge's decision is affirmed.

## BACKGROUND

Plaintiff worked as a dental technician and hospital foreman in the United States Navy for 23 years, before being honorably discharged from the Navy on September 30, 2010. (R. 232.) Plaintiff was discharged from the Navy due to several medical conditions, including depression, post-traumatic stress disorder ("PTSD") due to military sexual trauma, anxiety, and migraines (R. 63-67.) Prior to her discharge from the Navy, Plaintiff was hospitalized for five days in 2009 for depression, and diagnosed with Depressive Disorder NOS and migraine headaches. (R. 355-58.) Plaintiff applied for disability benefits through the United States Department of Veterans Affairs (the "VA"), and was found to be 90% disabled, including 50% for migraine headaches and 50% for major depressive order. (R. 936.) The voluminous administrative record is also

replete with documentation of Plaintiff's treatment for her mental health issues and migraines with various medical professionals at the VA. Of particular interest in this appeal is a note dated March 11, 2011, from Dr. Laura Ann Sunn, a psychiatrist at the VA; Dr. Sunn found that Plaintiff's speech was slow, she had psychomotor retardation, suffered from a depressed mood, and appeared downtrodden and subdued. (R. 800.) Dr. Sunn opined that Plaintiff was "so impaired that she cannot seek work and it is unlikely that she could concentrate long enough to complete tasks." (R. 800.)

Plaintiff filed her application for disability insurance benefits on May 14, 2013, alleging a disability onset date of September 30, 2010. (R. 26.) The claim was denied initially on October 3, 2013, and upon reconsideration May 23, 2014. (*Id*.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 10, 2015. (*Id*.) On October 15, 2015, ALJ Jessica Inouye issued her opinion finding that Plaintiff was not disabled. (R. 26-46.)

In her decision, the ALJ found that: (1) Plaintiff met the insured status requirement of the Social Security Act through December 31, 2015; (2) Plaintiff had engaged in substantial gainful activity since her alleged onset date of September 30, 2010; (3) Plaintiff had a severe impairment in the form of anxiety disorders (diagnosed as PTSD, generalized anxiety disorder, military trauma, and panic disorder with agoraphobia), depression, obesity, De Quervain tenosynovitis, and migraines; (4) Plaintiff's impairment did not meet the severity listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526); (5) Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) with following limitations relevant to this appeal: Plaintiff must work in a moderate or quieter noise level work environment; Plaintiff can learn, understand, remember, and carry out simple, routine, and repetitive tasks and sustain them throughout the typical workday; Plaintiff cannot

have required interaction with the public as part of her work tasks and can never perform teamwork or tandem tasks; Plaintiff can only have occasional, brief, and superficial interaction with coworkers; (6) Plaintiff was incapable of performing past relevant work as a dental assistant; (7) there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform; and (8) Plaintiff had not been under disability, as defined in the Social Security Act from September 30, 2010 through the date of the ALJ's decision. (R. at 26-46). The Appeals Council denied review on November 15, 2016 thereby rendering the ALJ's decision as final for the agency. (R. at 1-12).

## STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether Plaintiff is disabled as set forth in the Social Security Act, if it is supported by substantial evidence, and if it is free of legal error. *See* 20 C.F.R §§ 404.1520(a), 416.920(a); 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This standard is satisfied even if the ALJ makes only a "minimal[] articulat[ion of his] justification." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

## DISCUSSION

The Plaintiff raises five issues on appeal: 1) the ALJ improperly rejected the VA's disability finding; 2) the ALJ made a flawed credibility finding; 3) the ALJ failed to support her findings on the severity of Plaintiff's limitations arising from her mental impairments; 4) the ALJ did not account for all of Plaintiff's limitations in making her RFC finding; and 5) the ALJ did not properly weigh opinion evidence. As discussed herein, the Court rejects each of these arguments and affirms the ALJ's decision.

**I.      The VA Disability Rating**

The treatment of other governmental agencies' disability findings is covered by SSR 06-03p.  That Social Security Ruling states "a determination made by another agency [*e.g.*, Workers' Compensation, the Department of Veterans Affairs, or an insurance company] that you are disabled or blind is not binding on us."  SSR 06-03p.  However, the ruling acknowledges that such decisions "may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies on their rules."  *Id.*  The Seventh Circuit has made it clear that such decisions must be afforded "some weight."  *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006).  Moreover, the ALJ cannot solely rely on the differences between the various governmental entities in rejecting another agency's disability determination.  *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015).  However, an ALJ is entitled to give little weight to the VA's disability determination if it is based on medical evidence that the ALJ believes does not support a finding of disability under the Social Security Administration's guidelines.  *See Cleveland v. Colvin*, 2016 WL 704832, at *15-16 (N.D. Ill. Feb. 23, 2016).

Here, the ALJ found that the VA's disability rating was "generally of limited evidentiary value without consideration of the supporting evidence on which the rating was based" because "the VA disability rating reflects another agency's application of its own rules."  (R. 43.)   The ALJ rejected the VA's rating because it "relied heavily on subjective reports from the claimant," whereas "[t]he VA treatment records do not support [the] severity of impairments used for the rating, and in addition, they show primarily, normal mental status and physical examinations that are clearly inconsistent with disability under Social Security standards."  (R. 43.)

The Plaintiff argues that if the VA determined that Plaintiff was unable to work, then "Plaintiff is, by definition, entitled to Social Security benefits."  (Dkt 13 at 9.)  This is plainly false.  As noted above, the ALJ is not bound by any other agency's finding on disability.  In this

4

matter, the ALJ followed the directions of the Social Security Administration and the Seventh Circuit. She gave some weight to the VA's findings, determining that it was of "little evidentiary value," because the underlying treatment records from the VA did not support a finding that Plaintiff was disabled. The ALJ considered and weighed the VA's determination, and did not ignore the agency's findings. Contrary to the Plaintiff's assertions, the ALJ was not required to follow the VA's determination. As such, the Court finds that the ALJ properly considered the VA's conclusion and was not bound to accept them.

## II. Credibility Finding

The Court will not disturb the ALJ's credibility finding. An ALJ's credibility finding is afforded "considerable deference" on review and may only be overturned if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 35.) The ALJ then painstakingly and thoroughly catalogued Plaintiff's lengthy medical record, providing examples of the ways in which these records did not support the severity of the symptoms Plaintiff reported. At the end of this analysis, the ALJ concluded:

> While the claimant has severe depression and anxiety disorders, migraines, and physical impairments, these are not disabling. The record reflects many complaints but it does not reflect significant long-term findings to support them or support disability. The undersigned has concluded that the objective medical evidence shows she has severe impairments, but these are not as symptomatic as she claims based on lack of objective medical findings on examinations, as shown above. Significantly, there is

5

> no persuasive evidence that the claimant's treatment has been ineffective as alleged to address exacerbation of symptoms, except according to the claimant. There is an objective basis for migraine headaches, hand pain, some fatigue, anxiety, and depression in the medical evidence, but there is not sufficient objective support for the consistency, frequency, or the symptom level she alleges she has. The above factors, and the lack of objective findings on examinations to support disability, render her subjective reports grossly disproportional to the objective medical evidence, and undermine her general credibility.

(R. 41.)

Having reviewed the ALJ's opinion, the Court believes that the ALJ carefully and systematically considered all of the evidence and made a well-reasoned determination that Plaintiff's alleged symptoms were not credible in light of the findings made by her doctors and the reports in the medical record. While the Court might quibble with some of the conclusions ultimately drawn by the ALJ, the Court is required to show significant deference in credibility determinations, and cannot say here that the findings by the ALJ were unreasonable or unsupported.

Plaintiff raises two main concerns with the ALJ's credibility finding: 1) that the ALJ improperly held the gaps in Plaintiff's treatment against her; and 2) that the ALJ did not consider the inherent fluctuation of mental illness in considering Plaintiff's case. Regarding the first issue, the ALJ noted that "the consistency of [Plaintiff's] treatment dropped off progressively," and that she was often a no-show at physical therapy appointments. (R. 40-41.) The Plaintiff now claims that most of her missed appointments were the result of migraines or depression that was too debilitating to get out of bed. (R. 81-82.) However, the ALJ found (and the records reflect) that the only contemporaneous excuse Plaintiff ever gave for missing those appointments was out-of-state travel to Florida to visit and/or care for family members. (Tr. 38-41.) Plaintiff never told her providers at the time that she had to miss appointments due to her medical conditions. As such, the ALJ was justified in finding that the gaps in treatment cut against

6

Plaintiff's alleged symptoms in making her credibility determination. *See Puchalski v. Colvin*, 651 Fed. Appx. 535, 538 (7th Cir. 2016).

As for the fluctuation in Plaintiff's condition, the ALJ carefully documented each of Plaintiff's visits to her providers, noting each time her condition was considered severe and each time her condition was considered moderate or mild. (*Compare* R. 38 ("A GAF assessment was 50 currently, consistent with serious symptoms"), *with* R. 40 ("She estimated the claimant currently had a GAF score of 55, indicating moderate functional impact").) However, the ALJ determined from her review of the record that, on the whole, the record showed that medication had been generally effective in helping Plaintiff cope with her symptoms and the treatment had been effective in addressing "exacerbations of symptoms." (R. 41.) The Court believes that the ALJ appropriately considered the fluctuations in Plaintiff's condition, but ultimately determined that, in spite of these fluctuations, Plaintiff's reported symptoms were not supported by the record. The Court cannot say that this finding was unreasonable, and will not reverse the ALJ's credibility finding.

**III.   Paragraph B Criteria**

The ALJ adequately supported her findings on the so-called "Paragraph B" criteria, and they are based on substantial evidence in the record. In order to meet the relevant listings – 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) – a claimant must show that he or she suffers from one of the symptoms listed in Paragraph A of the listing, and also demonstrate at least two of the following Paragraph B criteria: 1) marked restriction in activities of daily living ("ADLs"); 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. 404, Subpart P, App. 1, §§ 12.04, 12.06.

The ALJ found that Plaintiff had mild restrictions in ADLs, noting that the Plaintiff had reported to medical providers that she was "independent with all ADLs" as of September 13, 2013. (R. 598.) While the Plaintiff argues that the ALJ was somehow predisposed to find that Plaintiff did not have marked restrictions in ADLs, she does not explain why the evidence relied on by the ALJ was incorrect. In fact, the Plaintiff seems to conflate a finding of mild ALD restrictions with a finding that Plaintiff is not disabled, arguing that light cleaning, driving a car, shopping, paying bills, and talking on the phone are "minimal activity" that are consistent with Plaintiff's reports that she is in bed most of the time due to her conditions. (Dkt. 13 at 12.) However, the question for the ALJ in assessing the Paragraph B criteria is not whether Plaintiff spends most of the day in bed. The question is what restriction her condition places on her ability to perform ADLs, such as cleaning, shopping, paying bills, grooming and other basic life functions. 20 C.F.R. 404, Subpart P, App. 1, §12.00C. There is substantial evidence on the record that the restrictions on Plaintiff in this regard are mild, and the Court will not overturn the ALJ's finding.

The ALJ found that the Plaintiff had moderate difficulties with social functioning. (R. 31-32.) The ALJ noted that Plaintiff had trouble with strangers and crowds, but also found that Plaintiff had no history of trouble getting along with others, no arrests, no incarceration, and had reported that she had no issues with authority figures. (R. 32.) The record also shows that Plaintiff would often visit her family out-of-state for months at a time, and reported on at least one occasion that she had a good visit with her mother in Florida. (R. 1397.) Once again, the ALJ has relied on substantial evidence to make her finding on this criterion. The Plaintiff may disagree with the ALJ's findings, but the Court may not disturb those findings unless they lack substantial evidence. There is evidence on the record that supports a finding that Plaintiff's

difficulties with social functioning are no worse than moderate, and the Court will not overturn the ALJ's finding.

The ALJ also found that Plaintiff did not have repeated episodes of decompensation. Episodes of decompensation "may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation" and "may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (*e.g.*, hospitalizations, placement in a halfway house, or a highly structured and directing household)." *Green v. Colvin*, 2016 WL 128134, at *3 (N.D. Ill. Jan. 12, 2016) (citing 20 C.F.R. 404, Subpart P, App. 1, § 12.00). Repeated episodes of decompensation means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.* The only documented episode of decompensation in the record is Plaintiff's hospitalization in 2009, which was noted by the ALJ and occurred before the disability onset date. Plaintiff's brief does not point out any additional episodes of decompensation. The ALJ had substantial evidence to find that Plaintiff did not suffer from repeated episodes of decompensation. Therefore, the Court affirms the ALJ's finding on this front as well.

As noted above, the Plaintiff must satisfy two of the Paragraph B criteria. Because the ALJ's findings on ADLs, social functioning, and episodes of decompensation were supported by substantial evidence, the Court need not reach the criterion of marked limitations in concentration, persistence, or pace. The ALJ properly supported her Paragraph B findings, and the Court affirms the ALJ's decision.

## IV.   Limitations in the RFC Finding

The ALJ properly accounted for Plaintiff's moderate restrictions in concentration, persistence, and pace in formulating the RFC finding. The ALJ found that Plaintiff could

perform light work with a number of restrictions, including: 1) working in "a moderate or quieter noise level environment;" 2) limiting Plaintiff to "simple, routine, and repetitive tasks;" 3) prohibiting Plaintiff from work that requires interaction with the general public as part of her work tasks or requires teamwork or tandem tasks; and 4) limiting Plaintiff to "occasional, brief, and superficial interaction with coworkers." (R. 33.)

Plaintiff argues that the RFC does not adequately account for Plaintiff's moderate restrictions in concentration, persistence, and pace. First, Plaintiff argues that limiting Plaintiff to simple, routine, repetitive tasks "does not necessarily accommodate an individual's limitations in concentration, persistence, or pace." (Dkt. 13 at 14.) While that may be true, the ALJ included several additional limitations (as described above), which accommodate Plaintiff's issues with concentration, persistence, or pace. Plaintiff's argument fails to consider these other restrictions.

Second, Plaintiff claims that "[i]t is inconceivable, given Plaintiff's multiple severe mental impairments, combined with her severe, chronic migraines and side effects from medication, that Plaintiff would be able to sustain the sort of concentration necessary in a full time work environment." (Dkt. 13 at 14.) This *ipse dixit* conclusion is not supported by any citation, explanation, or elaboration; simply declaring something "inconceivable" does not make it so. The ALJ considered the Plaintiff's symptoms and maladies and determined that she was able to perform light work with the aforementioned limitations. The Plaintiff believes that she is incapable for full-time work and that the ALJ is incorrect, but fails to support that conclusion in this section of her brief with any argument or evidence that would allow this Court to overturn the ALJ's findings.

Finally, Plaintiff contends that the ALJ's limitations were insufficient because "she said nothing of Plaintiff's documented difficulties with supervisors in her past work." The Court's

role is not to ensure that the ALJ considered every possible piece of evidence in formulating the RFC, but to review the ALJ's decision to see if it is supported by substantial evidence on the record. *See Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013) ("[A]n ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence" where "the ALJ's discussion . . . was supported by substantial evidence on the record"). There was ample evidence in the medical record to support the ALJ's findings. For example, on April 30, 2010, the Plaintiff was found to have normal attention and memory. (R. 36, 378.) Additionally, an examination with a consulting therapist found that Plaintiff had normal memory and could perform arithmetic calculations. (R. 609.) The ALJ's opinion cites several other findings, which suggest that Plaintiff's issues with concentration, persistence, and pace were not so severe that she was precluded from full-time work, and supported the ALJ's RFC finding. (R. 36-44.) This qualifies as substantial evidence on which to base the ALJ's RFC finding, and properly accounts for Plaintiff's conditions and limitations. As such, the Court will not reverse the ALJ's findings.

## V. The ALJ Properly Weight Opinion Evidence

Plaintiff attacks the ALJ's treatment of opinions evidence on two fronts: 1) she argues that the ALJ failed to properly consider the opinion of Plaintiff's treating psychiatrist (Dr. Sunn); and 2) the ALJ interpreted the opinion that Plaintiff suffered from "'paralyzing' migraines" literally. (Dkt. 13 at 14-15.) Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 416.927(c). Because of a treating physician's greater familiarity with the claimant's condition and the progression of his impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by

medical findings and is not inconsistent with other substantial evidence in the record.[1] 20 C.F.R. § 416.927(c)(2); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Clifford v. Apfel*, 227 F.3d at 870. An ALJ must provide "good reasons" for how much weight he gives to a treating source's medical opinion. *See Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009); 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our…decisions for the weight we give your treating source's opinion."). When an ALJ decides for "good reasons" not to give controlling weight to a treating physician's opinion, he must determine what weight to give to it and other available medical opinions in accordance with a series of factors, including the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the supportability of the opinion; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); see 20 C.F.R. § 416.927(c)(2)-(6). An ALJ must provide "sound explanation" for the weight he gives each opinion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If he does not discuss each factor explicitly, the ALJ should demonstrate that he is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

A review of the ALJ's treatment of Dr. Sunn's opinion demonstrates that the ALJ took the appropriate steps in weighing that opinion evidence. First, the ALJ determined that Dr. Sunn's opinion carried little weight (*i.e.*, she found that it did not have controlling weight, and then assigned it little weight). The ALJ noted that Dr. Sunn was a "longitudinal specialist," but that Dr. Sunn's opinion was only a "snapshot" of Plaintiff's functioning at the time of the assessment, and was not "supported by other and preponderant evidence in the record." (R. 42.)

---

[1] A recent change to the Administration's regulation regarding weighing opinion evidence will eliminate this rule, commonly known as the "treating physician rule," for new claims filed on or after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844, 5848–49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this appeal, however, the prior version of the regulation applies.

The Court believes that this description at least demonstrates that the ALJ was aware of and considered the relevant factors.

Additionally, the Court does not believe that the ALJ thought that the Plaintiff's physician literally found that Plaintiff's migraines caused paralysis. Instead, the ALJ "gave little weight to this characterization of migraines because Dr. Dang's treatment records at the VA do not support it." (R. 43.) The Plaintiff's argument here has no merit and is rejected by the Court. The Court believes that the ALJ adequately weight opinion testimony in this matter and will not reverse the ALJ's findings.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion is denied [dkt. 12], the Commissioner's motion is granted [dkt. 17], and the Administrative Law Judge's decision is affirmed.


ENTER: 2/1/2018

_____

U.S Magistrate Judge, Susan E. Cox